UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                                             Chapter 7

J.P.R. MECHANICAL INC.                                             Case No. 19-23480-RDD
d/b/a JPR MECHANICAL, et al.,                                      (Jointly Administered)

                             Debtors.
----------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105, 363 AND 506 OF THE BANKRUPTCY CODE: (I) APPROVING STIPULATION RESPECTING CARVE OUT FROM SECURED LIENS; (II) AUTHORIZING THE TRUSTEE'S SALE OF THE DEBTORS' PERSONAL PROPERTY; AND (III) GRANTING RELATED RELIEF**

      Upon the motion of Marianne T. O'Toole, solely in her capacity as the Chapter 7 Trustee ("Trustee") of the jointly-administered estates of J.P.R. Mechanical Inc. d/b/a JPR Mechanical ("JPR Mechanical"), J.P.R. Mechanical Services, Inc. ("JPR Mechanical Services") and J&G Group Inc. ("J&G" and, together with JPR Mechanical and JPR Mechanical Services, "Debtors"), seeking entry of an Order pursuant to §§105, 363 and 506 of title 11 of the United States Code ("Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 6004-1: (i) approving a stipulation between the Trustee and Dime Community Bank ("Dime"), a copy of which is annexed as Exhibit A ("Stipulation"), providing for, inter alia, a carve-out from Dime's secured liens; (ii) authorizing the sale (either publicly or privately) of the bankruptcy estates' right, title and interest in and to the Debtors' personal property, including certain collateral to which Dime is secured ("Dime Collateral") in accordance with the Stipulation (collectively, "Personal Property"); and (iii) granting the Trustee related relief, including authorization to consummate certain transactions on terms acceptable to the Trustee and on written notice to Dime, and to return property of nominal or no value to the estate ("Motion") [Dkt. No. 49]; and upon the Trustee's application for an Order scheduling a hearing on shortened notice of the Motion ("Application") [Dkt. No. 50]; and upon

1

the Order Scheduling Hearing on Trustee's Motion on Shortened Notice ("Scheduling Order") [Dkt. No. 51]; and upon the Affidavit of Service evidencing proof of service of the Motion, Application and Scheduling Order [Dkt. No. 53]; and upon the Limited Objection and Reservation of Rights filed by A.D.E. Systems, Inc. (the "A.D.E. Limited Objection") [Dkt. No. 54], Limited Objection and Reservation of Rights filed by Bruce Supply Corp. and Metrofab Pipe Corp. [Dkt. No. 58], Joinder to the A.D.E. Limited Objection filed by Delta Connects, Inc. [Dkt. No. 60], Limited Objection filed by Plaza Construction Corp. [Dkt. No. 61], Joinder to the A.D.E. Limited Objection and Reservation of Rights filed by Harry Brainum Jr. Inc. [Dkt. No. 63], Limited Objection filed by Libertas Funding, LLC and TVT 2.0 LLC [Dkt. No. 71], Limited Objection filed by Mercedes-Benz Financial Services USA LLC [Dkt. No. 74], Limited Objection filed by Grand Central Terminal Construction Joint Venture [Dkt. No. 75], Limited Opposition and Reservation of Rights of Paychex, Inc. [Dkt. No. 76], Limited Objection filed by A & I Bronx Realty Corp. [Dkt. No. 77], Joinder to A.D.E. Limited Objection filed by Anvil Mechanical [Dkt. No. 78], Objection and Reservation of Rights filed by S.W. Anderson Sales Corp. [Dkt. No. 79], Objection filed by Hunter Roberts Construction Group LLC [Dkt. No. 80], Limited Objection filed by CNY Construction CJS LLC [Dkt. No. 81], Limited Objection & Reservation of Rights filed by Tishman Construction Corporation of New York [Dkt. No. 86], and the Limited Objection and Reservation of Rights filed by Action Paper Co. [Dkt. No. 87] (collectively, the "Objections"); and upon the Response to the Objections filed by Dime [Dkt. No. 97]; and upon the hearing conducted on October 17, 2019 ("Hearing"), the transcript of which is incorporated herein by reference; and no objections to the Motion having been made at the Hearing; and after due deliberation thereon and good cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**

    A.    This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§157 and 1334.

    B.    Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. §157(b).

    C.    Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

    D.    Notice of the Motion and the relief requested therein was adequate and no other or further notice is required.

    E.    The Trustee has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, including this Court's approval of: (i) the Stipulation between the Trustee and Dime; (ii) the sale (either publicly or privately) of the bankruptcy estates' right, title and interest in and to the Personal Property, including the Dime Collateral in accordance with the Stipulation; and (iii) granting related relief, including authorization to consummated certain transactions on terms acceptable to the Trustee and on written notice to Dime, and to return property of nominal or no value to the estates.

    F.    The legal and factual bases set forth in the Motion and on the record at the Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

    1.    The Stipulation between the Trustee and Dime annexed as <u>Exhibit A</u> is approved with the following modifications and additions being consented to by the Trustee and Dime and reflected as follows:

        a. Paragraph 4 of the Stipulation is amended and modified in its entirety to read as follows:

4. Dime agrees that the Trustee shall carve out from the Dime Liens the following relating to the disposition of the Dime Collateral ("Carve-Out"): (A) sums sufficient to pay, in full, all reasonable and necessary non-professional Chapter 7 administrative expenses of the Trustee (including, inter alia, lock changes, insurance, labor, taxes, use and occupancy); (B) sums sufficient to pay, in full (subject to separate Order(s) of the Court): (1) all reasonable and necessary out-of-pocket expenses of the Trustee and her retained professionals; (2) the Trustee's statutory commissions; (3) the statutory commissions and expenses of the Trustee's auctioneer; (4) the reasonable fees incurred by Trustee's accountants; and (5)(a) the fees incurred by Trustee's counsel in connection with the Trustee's administration of the Equipment (as defined in the UCC), Inventory (as defined in the UCC) and Goods (as defined in the UCC) that is part of the Dime Collateral, provided that such fees will be capped at 10% of the gross proceeds of sale of the Dime Collateral; and (b) the reasonable fees incurred by Trustee's counsel in connection with the Trustee's administration of the Accounts (as defined in the UCC) that are part of the Dime Collateral; and (C) 5% of the gross proceeds of sale of the Dime Collateral for distributions on account of allowed unsecured claims the Debtors' estates in the order of priority under the Bankruptcy Code ("Creditor Carve-Out"), provided that Dime waives any right to, and shall not be entitled to, share in such Creditor-Carve Out from the Dime Collateral.

    b. Paragraph 5 of the Stipulation is amended and modified in its entirety to read as follows:

5. The Trustee is authorized to segregate sufficient funds from the proceeds of the sale or other disposition of the Dime Collateral to pay the amounts set forth in paragraph 4 herein and will segregate the balance of the proceeds subject to the asserted Dime Liens ("Net Proceeds"). Net Proceeds may be distributed to Dime up to the amount of the Dime Claim, if allowed, without further Court Order. The Trustee shall make reasonable distributions to Dime no more frequently than quarterly. Notwithstanding the foregoing, in the event the Trustee recovers amounts sufficient to satisfy the Dime Claim, if allowed, in full, the amounts segregated to pay the amounts set forth in paragraph 4 shall not be distributed for any such purposes pending further order of the Court regarding whether such funds are properly payable instead to any lien holder whose interest is subordinate to Dime. All rights of parties who are not parties to the Stipulation are expressly reserved.

    c. A new Paragraph 18 shall be added to the Stipulation and will provide:

18. Nothing in this Stipulation permits any liens or claims to attach to any funds that are deemed to be held in trust in accordance with Article 3A of the New York Lien Law or any other applicable non-bankruptcy law or authorizes the use of any such trust funds. All parties expressly reserve their respective rights, claims and/or defenses with respect to the validity and priority of any such liens and claims, rights of action, and/or defenses under Article 3A of the New York Lien Law.

2. The Trustee is authorized to sell (either publicly or privately) the bankruptcy estates' right, title and interest in and to the Personal Property ("Sale") provided that the Trustee will provide: (a) as to any proposed Sale in excess of $50,000, twenty-one days' notice to the Debtors, Dime, the United States Trustee, entities who filed notices of appearance, any known holders of liens or ownership claims against the specific Personal Property, and all known creditors; and (b) as to any proposed Sale of $50,000 or less, twenty-one days' notice to the Debtors, Dime, the United States Trustee, entities who filed notices of appearance, any known holders of liens or ownership claims against the specific Personal Property, and any creditors for whom the Trustee has an email address. The foregoing notice shall constitute good and sufficient notice of the proposed Sale, and no other or further notice shall be necessary or required. In the event objections are timely filed, then a hearing will be scheduled, and the proposed Sale will be adjourned pending the outcome of the hearing on the objection. In the event no objections are timely filed, then the Sale may be consummated by the Trustee without further Order of the Court.

3. At the Trustee's discretion, the Personal Property will be offered for sale in bulk and/or in lots. The Trustee will determine the highest or best bid (or bids) for the Personal Property. The Trustee may seek entry of an Order confirming any sale of the Personal Property, but the Trustee shall not be required to seek entry of such an Order.

4. Title to the Personal Property will be transferred to the successful purchaser(s) pursuant to a Bill of Sale. Any applicable sales taxes shall be charged and collected from purchasers and paid to the appropriate taxing authorities in accordance with applicable law.

5. The Personal Property will be sold: (a) "as is", "where is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness for a particular purpose, and without warranty or agreement as to the condition of such Personal

Property; and (b) free and clear of all liens, claims and encumbrances, with any such liens, claims or encumbrances to attach to the net proceeds of sale in the same amount and priority as they existed as of the date the Debtors filed their petitions for relief with this Court.

6. The Trustee is authorized under sections 105 and 363 of the Bankruptcy Code to consummate certain transactions on terms acceptable to the Trustee and on written notice to Dime.

7. The Trustee is authorized to facilitate the pickup and/or return of property that the Trustee has determined has limited or no value to the Debtors' estates.

8. Notwithstanding anything to the contrary contained herein, the rights and interests of Key Equipment Finance, a division of KeyBank National Association ("KEF"), in and to the equipment described in that certain Master Equipment Lease Agreement dated as of June 10, 2016 between KEF, as lessor, and JPR Mechanical, as lessee, and all equipment schedules and other documents related thereto (collectively, the "KEF Equipment"), are hereby preserved to the extent and with the same priority that such interests existed as of the date the Debtors filed their petitions for relief with this Court and nothing contained herein is a waiver of the Trustee's and Dime's rights to contest or otherwise object to the interests of KEF, or any other party asserting a claim, in and to the KEF Equipment. KEF has delivered to the Trustee, and the Trustee has acknowledged receipt of, a schedule of the KEF Equipment. The Trustee shall use the Trustee's best efforts to identify each item of the KEY Equipment prior to sale of any of the Debtors' assets and shall consult with KEF in connection therewith. Nothing herein shall be construed to permit the Trustee to sell, transfer or otherwise dispose of the KEF Equipment without KEF's express, prior, written consent. To the extent that any KEF Equipment is sold or otherwise transferred by the Trustee with the consent of KEF, the Trustee is hereby authorized to distribute the proceeds of such equipment to KEF in an amount as may be agreed among the parties.

9. Effective as of the date of this Order, the automatic stay imposed pursuant to 11 U.S.C. § 362 is hereby lifted and/or modified to the extent necessary for the sole purpose of permitting A & I Bronx Realty Corp. to apply the security deposit it is holding towards post-petition amounts owed for use and occupancy.

10. Effective as of the date of this Order, the automatic stay imposed pursuant to 11 U.S.C. § 362 is hereby lifted and/or modified to the extent necessary for the sole purpose of permitting Action Paper Co. to apply the security deposit it is holding towards post-petition amounts owed for use and occupancy.

11. All parties entering the Debtors' facility for the removal of any materials or equipment located at (i) 429-441 East 164th Street, Bronx, New York 10456, (ii) 434 East 135th Street, Bronx, New York 10456, (iii) the third-party warehouse at 18 Ford Products Road, Valley Cottage, New York 10989, (iv) the Debtors' offices in New Rochelle, New York and/or (v) any facility which is owned or controlled by the Debtors (collectively, "Debtors' Premises"), including, but not limited to, any riggers or agents to inspect or remove any inventory, material or equipment, must (a) execute an indemnification agreement in favor of the Trustee, the bankruptcy estates and the applicable landlord, in a form and substance satisfactory to the Trustee, from each person entering any of the Debtors' Premises and (b) provide the Trustee and the applicable landlord, with an appropriate Certificate of Insurance naming the Trustee, Debtors and applicable landlord as additional insureds with at least $2,000,000 of coverage per occurrence and $1,000,000 of worker's compensation coverage.

12. The Trustee is authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the requirements established by this Order.

13. This Court may retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: October 31, 2019
      White Plains, New York

                                      /s/ Robert D. Drain
                                      Hon. Robert D. Drain
                                      United States Bankruptcy Judge