BOND, SCHOENECK & KING, PLLC
350 Linden Oaks, Third Floor
Rochester, New York 13202
Tel: (585) 362-4700
Fax: (585) 362-4759
Email: ipalermo@bsk.com
Ingrid C. Palermo, Esq.
Attorneys for Paychex, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Telephonic Hearing Date: April 29, 2020 |
| J.P.R. MECHANICAL INC. et al., | Time: 10:00 a.m. |
| Debtors. | Chapter 7 (Jointly Administered) |
| | Case No. 19-23480 |

**OPPOSITION TO TRUSTEE'S MOTION TO ENFORCE THE AUTOMATIC STAY AS AGAINST PAYCHEX, INC. AND GRANT RELATED RELIEF**

Paychex, Inc. ("Paychex"), by and through its counsel, Bond, Schoeneck & King, PLLC, files this objection ("Objection") to the Trustee's Motion to enforce the Automatic Stay As Against Paychex, Inc. and Grant Related Relief ("Motion"), and respectfully states as follows:

**STATEMENT OF FACTS**

1. Paychex is a provider of payroll, human resource and benefits outsourcing services for small to medium-sized businesses.[1] J.P.R. Mechanical Services, Inc. and J&G Group, Inc. ("Debtors") entered into Major Market Services Agreements with Paychex (the "Contracts") in 2013 and 2014, respectively. Pursuant to the Contracts, Paychex agreed to process Debtors' payroll based solely on information provided by Debtors to Paychex; prepare payroll checks drawn on Debtors' bank account or as otherwise directed by Debtors; prepare payroll reports for each payroll processed by Debtors; and provide the payroll reports, checks and/or payroll check stubs to Debtors for review and distribution. The Contracts further provided that Paychex "will process Electronic Fund Transfer (EFT) transactions, one or more banking days prior to Debtors' check date, for such amounts as are necessary to pay Debtors' employees. Such amounts are to be held in an account established by Paychex until Client's check date, when funds shall be deposited to employee accounts as specified." Both Contracts provide that "in the event of a Client default, Paychex may, at its sole option, terminate the agreement, or a portion thereof, without notice." Finally, both Contracts include a provision relating to the "Preview Hosting Service," which provides that "Paychex will provide a hosting environment for Client to access the Paychex Preview software application ("Preview") through the Internet using a third party application as an alternative to installing Preview on Client's computer. Upon termination of the Preview

---

[1] The factual background of this case is contained in the Affirmation of Michelle C. Stachura ("Stachura Affirmation"), filed along with this opposition and specifically incorporated herein, or based upon the personal knowledge of the undersigned.

Hosting Service or the Agreement, (i) Paychex will provide Client a copy of Client's payroll data stored in the hosted environment and a copy of the then current Preview software and (ii) Client will continue to have access to Preview and Client's payroll data for fourteen (14) days."  See, Stachura Affirmation.

2. Consistent with the Contracts and the parties' longstanding relationship, the Debtors called in their payroll to Paychex on Wednesday, August 14, 2019 for payment to employees by direct deposit on August 15, 2019. The payroll was a typical payroll and totaled approximately $140,000. Paychex contacted the Debtors' bank to initiate a debit to fund payroll and, consistent with past practices, processed the Debtors' payroll, making direct deposits into the Debtors' employees' bank accounts. Debtors filed for Chapter 7 bankruptcy the following day on Friday August 16, 2019 ("Petition Date"). On Monday August 19, 2019, Paychex learned that the debit from the Debtors' bank account was reversed and as a result, Paychex had funded over $140,000 of the Debtors' wage liability. On August 19, 2019, upon learning of the bankruptcy, Paychex's Bankruptcy and Loss Portfolio Manager, Michelle Stachura, spoke with Dawn Kirby, Esq., the Debtors' bankruptcy attorney, who advised that she (Ms. Kirby) had no information about the payroll. Later that day, Ms. Kirby advised Ms. Stachura by e-mail that she "spoke to the Trustee's counsel about authorizing payroll release" and that counsel "is speaking with the Trustee to get an answer." See, Stachura Affirmation.

3. Thereafter, to mitigate damages, Paychex was able to reverse some of the payroll direct deposits and did not pay any withholdings. The outstanding balance due to Paychex for this eve of bankruptcy debt is $63,917.14. Pursuant to the express terms of the "Client default" provisions, both Contracts were breached upon the Debtors' non-payment, and were rejected under the Bankruptcy Code on October 15, 2019. As a result of the breach and ultimate rejection the

3

Contracts were terminated and Paychex's duties under the Contracts, including issuance of W-2s for Debtors' employees, ceased.  See, Stachura Affirmation.

4. On September 12, 2019, Paychex filed its notice of appearance and demand for service of process in the J&G Group Inc, 19-23482, case. [Dkt No.22]

5. Paychex's counsel had its first substantive contact with the Trustee's law firm when on October 3, 2019, Paychex filed a Limited Objection and Reservation of Rights to the Trustee's Motion to Approve Stipulation Between the Trustee and Dime Community Bank [Dkt. No 76]. This objection detailed the contractual relationship and breach of contract by the Debtors.  On October 16, 2019, the trustee's counsel and the undersigned had a telephone conversation regarding the Limited Objection and ultimately resolved the Objection.

6. Several months thereafter, the Trustee's counsel asked if Paychex could prepare the W2 and other tax filings for the Debtors and the cost thereof.  Paychex indicated that it could prepare the documents and quoted Trustee's counsel the cost of preparing those documents.  Trustee's counsel indicated that the cost was too high and did not engage in any further negotiations.

7. Subsequently, Trustee's counsel asked this Court for intervention in this matter.  As a result of the conference with this Court, Paychex provided the Trustee's counsel with the name of the individual who would have been in possession of the payroll records and how those records were sent to that individual.

## Motion

8. The Trustee has requested that this Court find Paychex in violation of the automatic stay for failing to turn over property of the Debtors' estate. The Trustee also claims that she did not have any knowledge of the contract between the debtors and Paychex prior to October 15, 2019, the date by which the Contracts were rejected as a matter of law.

9. Finally, the Trustee seeks to have Paychex turn over documents pursuant to Rule 2004 that Paychex previously provided to the Debtors, and even though the Trustee rejected the Contracts between the Debtors and Paychex, removing any obligation that the Paychex has to perform any additional services under those Contracts.

## **Opposition**

10. Simply put, this Court is asked to determine what rights a trustee can assert after she has rejected an executory contract and what obligations a third party has once that contract is rejected.

**Contract Rejection**

11. 11 U.S.C. § 365 ("Section 365") provides that a trustee can assume or reject executory contracts.

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a)(2020).

12. Section 365(d)(1) specifically provides that in a chapter 7 case, if the trustee does not assume or reject an executory contract within 60 days the contract is deemed rejected.

> (d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

11 U.S.C. § 365(d)(1)(2020).

13. The Debtors' Petition Date was August 16, 2019, and as a result the Contracts were rejected by the Trustee as a matter of law on October 15, 2019.

**Knowledge of the Contract is no Defense / Excuse**

14. The Trustee claims that she did not know of the Contracts in what appears to be an attempt to be relieved of the consequences of rejecting the Contracts. Case law is clear that a trustee has the duty to investigate the affairs of a debtor and any claim that a trustee may try to make that she did not have knowledge of a contract is irrelevant. Paychex was in communication with Debtors' counsel regarding the reversal of funding the payroll. Debtors' counsel represented that she was in communication with the Trustee regarding the payroll issues. Paychex filed a notice of appearance in these cases on September 12, 2019. Furthermore, Paychex filed opposition to the Trustee's motion to sell assets on October 3, 2019 and spoke to the Trustee's counsel on October 16, 2019 about the Contracts. Paychex's participation in these cases should have put the Trustee on notice of the Contracts.

15. Ultimately, the Trustee's claim is irrelevant because lack of knowledge does not undo the consequences of allowing a contract to be rejected as a matter of law. The Fifth Circuit Court of Appeals has addressed this issue. Just because a debtor does not list an executory contract, it does not change the fact that an executory contract is deemed rejected 60 days after a petition date pursuant to Section 365(d)(1). A trustee has the duty to determine whether any executory contracts exist. Once the contract is rejected it is no longer property of the estate. *See, RPD Holdings, L.L.C. v. Tech Pharm. Servs (In re Provider Meds, L.L.C.)*, 907 F.3d 845 (5th Cir. 2018).

16. Even if Paychex's affirmative actions in making the Contracts known, did not put the Trustee on notice of the Contracts, it does not matter, the Trustee has the affirmative duty to investigate the assets, including contracts, of the estate.

**The Contract and State Law determine the Rights of the Parties once a Contract is Rejected**

17. The next issue to address is if an executory contract is rejected where does that leave the parties. The United States Supreme Court has clearly stated that when an executory contract is rejected it is considered a pre-petition breach of that contract. *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652,1661-62 (2019):

> Rejection "constitutes a breach of [an executory] contract," deemed to occur "immediately before the date of the filing of the petition." Or said more pithily for current purposes, a rejection is a breach. And "breach" is neither a defined nor a specialized bankruptcy term. It means in the Code what it means in contract law outside bankruptcy. See *Field v. Mans, 516 U.S. 59, 69, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995)* (Congress generally meant for the Bankruptcy Code to "incorporate the established meaning" of "terms that have accumulated settled meaning" (internal quotation marks omitted)). So, the first place to go in divining the effects of rejection is to non-bankruptcy contract law, which can tell us the effects of breach.

*Id*.

18. The United States Supreme Court has also made it clear that the estate is not entitled to more what a contract provides. Specifically, an estate's property rights do not expand just because a contract is rejected, and a trustee cannot recapture rights it gave up when rejecting a contract.

> *Section 365* reflects a general bankruptcy rule: The estate cannot possess anything more than the debtor itself did outside bankruptcy. See *Board of Trade of Chicago v. Johnson, 264 U.S. 1, 15, 44 S. Ct. 232, 68 L. Ed. 533 (1924)* (establishing that principle); *§541(a)(1)* (defining the estate to include the "interests *of the debtor* in property" (emphasis added)). As one bankruptcy scholar has put the point: Whatever "limitation[s] on the debtor's property [apply]

7

>outside of bankruptcy[ ] appl[y] inside of bankruptcy as well. A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either." D. Baird, Elements of Bankruptcy 97 (6th ed. 2014). So if the not-yet debtor was subject to a counterparty's contractual right …, so too is the trustee or debtor once the bankruptcy petition has been filed. The rejection-as-breach rule (but *not* the rejection-as-rescission rule) ensures that result. By insisting that the same counterparty rights survive rejection as survive breach, the rule prevents a debtor in bankruptcy from recapturing interests it had given up.

*Id* at 1663.

19. Even though it predates the United States Supreme Court's recent ruling, Second Circuit precedent is consistent with that ruling and once a contract is rejected a party has no further obligation to perform under a contract. The Trustee could have forced Paychex to perform under the Contracts, but instead, the Contracts were rejected which absolves Paychex from any responsibility under the Contracts. The Debtors and/or Trustee cannot compel Paychex to perform under an executory contract after rejection. The Second Circuit has explained that Section 365 by giving debtors the opportunity to assume or reject executory contracts, vests in them a choice between forcing a party to do business with the debtor and alleviating the debtor of continuing contract obligations. *Chateauguay Corp. v. LTV Steel Co. (In re Chateauguay Corp.)*, 10 F.3d 994, 994-95 (2d Cir. 1993) (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985) ("The main purpose of Section 365 is to allow a debtor to reject executory contracts in order to relieve the estate of burdensome obligations while at the same time providing 'a means whereby a debtor can force others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so.'"); *see also Wechsler v. Hunt Health Sys. (In re Towers Fin. Corp.)*, 1999 U.S. Dist. LEXIS 8944 (S.D.N.Y. 1999). When an executory contract

is rejected, it is "deemed breached by the debtor as of the date prior to the debtor's bankruptcy filing." *Wechsler*, 1999 U.S. Dist. LEXIS 8499 at *56.

20. Following the United States Supreme Court's directive, we look to New York Law. Under common law, the breach of contract by one party relieves the other party of its obligation to perform. *Wechsler v. Hunt Health Sys.*, 330 F. Supp. 2d 383 (S.D.N.Y. 2004). "[A] party's failure to pay pursuant to a contract excuses the other party's obligation to further perform." *Id*. (quoting *Franklin Pavkov Constr. Co. v. Ultra Roof, Inc.*, 51 F. Supp. 2d 204, 215 (N.D.N.Y. 1999); *see also NAS Electronics, Inc. v. Transtech Electronics PTE Ltd.*, 262 F. Supp. 2d 134 (S.D.N.Y. 2003) ("Under New York law, when one party has committed a material breach of a contract, the non-breaching party is discharged from performing any further obligations under the contract, and the non-breaching party may elect to terminate the contract and sue for damages.").

21. By rejecting the Contracts with Paychex, the Trustee gave up all rights under the Contracts and cannot compel Paychex to perform under those Contracts.

**Paychex Did Not Violate the Stay as it does not have Property of the Estate**

22. The Trustee asks this Court to find Paychex in violation of the automatic stay. Although not specific, the Trustee apparently claims that Paychex is exercising control over property of the estate. As discussed in the Stachura Affirmation, Paychex has at best a copy of the Debtors' payroll records, and not the records themselves. Furthermore, Paychex has provided the Trustee the names of the individual who created and maintained the Debtors' payroll records so that the Trustee could ask that individual where the records are located, or even look at the computer and papers records of that individual. These are clearly not the actions of an entity exercising control over the Debtors' books and records.

9

23. As discussed above, the Trustee gave up any rights the estate had under the contract and the claim that Paychex is violating the automatic stay is an attempt to force Paychex to provide the services under the rejected contract.

**Rule 2004 Should Not Be Used to Force a Party to Perform Under a Rejected Contract**

24. The Trustee's request to have Paychex turn over documents pursuant to Federal Rules of Bankruptcy Procedure Rule 2004 ("Rule 2004") is nothing more than an attempt to force Paychex to perform under the rejected Contracts.

25. Rule 2004 allows for the examination of any entity "to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Transmar Commodity Grp.*, No. 16-13625-JLG, 2018 Bankr. LEXIS 2473 at *10 (Bankr. S.D.N.Y. Aug. 17, 2018) (Garrity, J.) (quoting *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (Gropper, J.)). The subject matter of examination is broad and includes "any matter which may affect the administration of the debtor's estate. *Id*. at *11. "Third parties are subject to examination . . . 'if they possess knowledge of the debtor's acts, conduct, or financial affairs which relate to the bankruptcy proceedings.'" *Id*. (quoting *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)).

26. Courts have discretion with respect to granting or denying requests for discovery under Rule 2004. *In re Transmar Commodity Grp.,* 2018 Bankr. LEXIS 2473 at *11 (*citing In re SunEdison, Inc*., 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017) (Bernstein, J.)). However, the court must first make a finding of good cause before granting discovery. *Id. (citing In re Madison Williams and Co., LLC*, No. 11-15896, 2014 Bankr. LEXIS 50 (Bankr. S.D.N.Y 2001) (Gropper,

J.)). The party seeking discovery must demonstrate that the exam is necessary to establish a claim or that the denial of discovery would cause the party undue hardship or injustice. Id. at * 12 (citing *ePlus, Inc. v. Katz (In re Metion, Inc.*), 318 B.R. 263, 268 (S.D.N.Y. 2004)). Only after that burden is met must the bankruptcy court balance the competing interests of the parties, weighing the relevance and necessity of the information sought. *Id. (citing In re Drexel Burnham Lambert Grp.,* 123 B.R., 702, 712 (Bankr. S.D.N.Y. 1991)). Courts are to consider, inter alia, the parties' relative access to relevant information, the importance of discovery, the burden and expense of discovery and whether that burden outweighs likely benefits. Id. at *13 (citing Fed. R. Civ. P. 26). Here, the Debtors have the information, the burden on Paychex forcing it to perform under a rejected contract outweighs the benefit of expedience and ease.

27. Courts regularly deny Rule 2004 discovery among parties that are subject to an adversary proceeding or contested matter. *In re Transmar Commodity Grp.*, 2018 Bankr. LEXIS 2473 at *15 (citing *In re Recoton Corp.*, 307 B.R. at 755). Even if no adversary proceeding is pending, discovery by a trustee of a target of such litigation may be improper if Rule 2004 discovery is meant to avoid the more stringent discovery rules applicable in an adversary proceeding such as those in Fed. R. Bankr. P. 7026. *Id*. The Trustee has filed a motion against Paychex and as such the parties are engaged in litigation and Rule 2004 discovery is inappropriate.

28. In *Transmar*, the court made a specific finding that the third party was the only viable source of the information the trustee needed consisting of internal communications not shared with the debtor. Still, the court limited the types of information ordered disclosed to what it found relevant to reduce the burden to the third-party.

29. In our case, Paychex is not the only viable source of discovery. The Debtors have the affirmative duty to provide the Trustee with their tax returns and payroll records, and Paychex has

told the Trustee who to ask for the records.  Paychex may be the easiest source of discovery, but Paychex is not a fiduciary of the Debtors and under the terms of the rejected Contracts it is the Debtors' responsibility to comply with all federal and state laws.

30.  Ultimately, this request under Rule 2004 is nothing more than an attempt to force Paychex to perform under the rejected contracts.  To grant the Trustee's motion for discovery would be an injustice under the facts and circumstances of this case.

**WHEREFORE** Paychex respectfully requests that the Motion be denied, and that Paychex be granted such further and equitable relief as to this Court seems just and proper.


Dated: April 24, 2020
     Rochester, New York

Respectfully submitted,
BOND, SCHOENECK & KING, PLLC

By:     */s/ Ingrid C. Palermo*
Ingrid C. Palermo, Esq.
350 Linden Oaks, Third Floor
Rochester, New York 13202
Tel:  (585) 362-4700
Fax: (585) 362-4759
Email:  ipalermo@bsk.com

*Attorneys for Paychex, Inc.*