UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

J.P.R. MECHANICAL INC. et al.,

                              Debtors.

**AFFIRMATION OF Michelle C. Stachura In Opposition to Trustees Motion to Enforce the Automatic Stay**

Chapter 7
(Jointly Administered)

Case No. 19-23480

**Michelle C. Stachura**, being duly sworn says:

1. I am an attorney admitted to practice in this Court and I am currently the Bankruptcy and Loss Portfolio Manager for Paychex, Inc. ("Paychex").

2. I am familiar with this matter, and I have knowledge of the facts and circumstances set forth herein based on my review of records maintained by Paychex in the ordinary course of its business.

3. I submit this affidavit in opposition to the Trustee's motion seeking an Order pursuant to 11 U.S.C. §§ 105(a) and 362 enforcing the automatic stay as against Paychex.

4. Paychex is a provider of payroll, human resource and benefits outsourcing services for small to medium-sized businesses.

5. J.P.R. Mechanical Services, Inc. and J&G Group, Inc. ("Debtors") entered into a Major Market Services Agreements with Paychex (the "Contracts") in 2013 and

1

2014, respectively. Copies of the Contracts are attached hereto as **Exhibits A** and **B**, respectively.

6. Pursuant to the Contracts, Paychex agreed to process Debtors' payroll based solely on information provided by Debtors to Paychex; prepare payroll checks drawn on Debtors' bank account or as otherwise directed by Debtors; prepare payroll reports for each payroll processed by Debtors; and provide the payroll reports, checks and/or payroll check stubs to Debtors for review and distribution.

7. The Contracts further provide that Paychex "will process Electronic Fund Transfer (EFT) transactions, one or more banking days prior to Debtors' check date, for such amounts as are necessary to pay Debtors' employees. Such amounts are to be held in an account established by Paychex until Client's check date, when funds shall be deposited to employee accounts as specified."

8. Both Contracts provide that "in the event of a Client default, Paychex may, at its sole option, terminate the agreement, or a portion thereof, without notice" (**Exhibit A, B**).

9. Finally, both Contracts include a provision relating to the "Preview Hosting Service," which provides that "Paychex will provide a hosting environment for Client to access the Paychex Preview software application ("Preview) through the Internet using a third party application as an alternative to installing Preview on Client's computer. Upon termination of the Preview Hosting Service or the Agreement, (i) Paychex will provide Client a copy of Client's payroll data stored in the hosted environment and a copy of the

then current Preview software and (ii) Client will continue to have access to Preview and Client's payroll data for fourteen (14) days."

10. Consistent with the Contracts and the parties' longstanding relationship, the Debtors called in their payroll to Paychex on Wednesday, August 14, 2019 for payment to employees by direct deposit on August 15, 2019. The payroll was a typical payroll and totaled approximately $140,000. Paychex contacted the Debtors' bank to initiate a debit to fund payroll and, consistent with past practices, processed the Debtors' payroll, making direct deposits into the Debtors' employees' bank accounts.

11. Debtors filed for Chapter 7 bankruptcy the following day on Friday August 16, 2019.

12. On Monday August 19, 2019, Paychex learned that the debit from the Debtors' bank account was reversed and as a result, Paychex had funded over $140,000 of the Debtors' wage liability.

13. On August 19, 2019, upon learning of the bankruptcy, your deponent spoke with Dawn Kirby, Esq., the Debtors' bankruptcy attorney, who advised that she (Ms. Kirby) had no information about the payroll.

14. In follow-up to that conversation, and consistent with Paychex's obligations under the Contracts, I emailed Ms. Kirby and attached the payroll journals for the last payroll run for both companies.

15. In response, Ms. Kirby advised that she "spoke to the Trustee's counsel about authorizing the payroll release" and that counsel "is speaking with the Trustee to get an answer."

3

16. Thereafter, to mitigate damages, Paychex was able to reverse some of the payroll direct deposits and did not pay any withholdings. The outstanding balance due to Paychex for this eve of bankruptcy debt is $63,917.14.

17. Pursuant to the express terms of the "Client default" provisions, both Contracts were breached upon the Debtors' non-payment, and were rejected under the Bankruptcy Code on October 15, 2019.

18. As a result of the breach and ultimate rejection resulting from the instant bankruptcy filings, Paychex's duties under the Contract, including issuance of W-2s for Debtors' employees, ceased.

Dated: April 24, 2020

/s/ Michelle C. Stachura

Michelle C. Stachura